# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHAEL JOSSY, #A0718566, | ) | CIV. NO. 19-00055 LEK-RT |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT |
| | ) | WITH LEAVE TO AMEND |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the court is pro se Plaintiff Michael Jossy's prisoner civil rights
Complaint. ECF No. 1. Jossy complains about incidents that allegedly occurred
at the Hawaii Community Correctional Center ("HCCC") between August 13,
2015, and an unidentified date in August 2016, and thereafter at the Halawa
Correctional Facility ("HCF"), until he commenced this suit. Jossy alleges Hawaii
Department of Public Safety ("DPS"), HCCC, and HCF prison officials violated
his constitutional rights.[1]

---

[1] Jossy names as Defendants in their individual and official capacities: the State of
Hawaii, Governor David Ige; DPS Director Nolan Espinda, physician Dr. Yamamoto; HCCC
Warden Peter Cabreros and adult correctional officers ("ACOs") Isaac Nihoa, Pati Fa'avai, and
Watanabe; HCF Warden Scott Harrington and ACOs Towler, Sgt. Sheridan, Marquez, Lt. Maele,
and John Does 1-2.

For the following reasons, the Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), with leave to amend those claims that are dismissed without prejudice.

Jossy may file an amended pleading asserting those claims that he elects to proceed with in *this* action, on or before June 19, 2019. He may file a separate action or actions asserting the claims that are severed from the claims that he pursues herein at his discretion in light of the discussion below. Failure to file a timely amended pleading may result in dismissal of this action with prejudice.

## I. SCREENING

The court is required to conduct a pre-answer screening of Jossy's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), and dismiss any claim that is frivolous, malicious, fails to state a colorable claim for relief, or seeks damages from defendants who are immune from suit. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (screening under § 1915A(a)). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

The court must set conclusory factual allegations aside, accept nonconclusory factual allegations as true, and determine whether those factual allegations accepted as true state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 676-684; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

(9th Cir. 2001) (noting that the court need not accept legal conclusions, unwarranted deductions of fact, or unreasonable inferences as true). "The plausibility standard is not akin to a probability requirement;" rather, it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Leave to amend should be granted if it appears the plaintiff can correct the complaint's defects. *Lopez*, 203 F.3d at 1130. Dismissal without leave to amend is appropriate when "it is clear that the complaint [or claim] could not be saved by any amendment." *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  BACKGROUND AND CLAIMS[2]

Jossy was incarcerated at HCCC between August 2015 and August 2016, and thereafter at HCF and at the Waiawa Correctional Facility ("Waiawa").[3] Jossy's Complaint asserts incidents that occurred over more than three years at HCCC, HCF, and Waiawa. It is set forth in a disjointed format that makes it difficult to understand when and where a particular incident occurred, which

---

[2] Jossy's nonconclusory facts are accepted as true and construed in the light most favorable to him on screening. *See Nordstrom*, 762 F.3d at 908.

[3] Jossy does not say *when* he transferred to Waiawa, only the date that he returned to HCF.

Defendant(s) were involved, and what each Defendant personally did to violate Jossy's constitutional rights.

Jossy generally complains about the alleged systemic overcrowding in Hawaii's prisons for the past thirty years.[4] He alleges this overcrowding is the underlying cause of all of his claims. Jossy states that he has a history of traumatic brain injuries and mental illness, including post-traumatic stress disorder ("PTSD") and bipolar disorder. He claims that prison officials have known about his mental and medical history since at least June 2012, when an unidentified physician allegedly relayed these diagnoses to DPS (presumably during an earlier incarceration). He claims that stress and anxiety trigger his mental illnesses and have lead to several "physiological and life threatening cardiac emergencies." Compl., ECF No. 1, PageID #3.

Jossy asserts two primary causes of action: (1) "Inadequate Mental/Medical Health Care," at HCCC and HCF (Count I); and (2) "Procedural Due Process Violations," that began at Waiawa and concluded at HCF (Count II). *Id.*, PageID #3-15. Although Jossy relates many incidents involving other prisoners, as evidentiary support for his own allegations, the court discusses only those allegations in which Jossy alleges his own rights were violated.

_____

[4] Jossy does not allege that he has been incarcerated in Hawaii's prisons for thirty years.

### A.    Count I:  Eighth Amendment Claims

Jossy says that he was exposed to "racial violence repeatedly and continuously" while in custody, and was repeatedly assaulted by inmates and guards at HCCC and at HCF, who failed to protect him.  *Id.*, PageID #5.  Jossy says this environment caused constant him  anxiety, stress, and fear, which he alleges were "directly related to [his] active bipolar disorder and PTSD," and caused several cardiac emergencies.  *Id.*

### 1.    *Incidents at HCCC:  August 2015 and August 2016*

Between August 28-30, 2015, Jossy submitted medical requests for psychiatric treatment with a licensed psychiatrist, but these requests were denied. *Id.*  He provides no further information regarding these requests or denials.

Jossy alleges ACO Nihoa struck him in the head on September 28, 2015, causing pain, distress, and anxiety, that exacerbated his PTSD and bipolar condition.  *Id.*

Jossy alleges ACO Fa'avai struck him in the head on October 13, 2015, causing him to almost lose consciousness and precipitating a panic attack.  *Id.*, PageID #5-6.

On November 11, 2015, Jossy met with Dr. Yamamoto, who he alleges "failed to review [his] prior history . . . and medical records."  *Id.* at PageID #6.

Dr. Yamamoto diagnosed him with "unspecified adjustment disorder," which Jossy alleges was a "rubber stamp" diagnosis given to all new inmates.  *Id.*

Jossy alleges ACO Watanabe harassed him, then threw and dragged him "across the room" striking his head several times against the wall and door jamb on December 30, 2015.  *Id.*  Jossy says this attack was unprovoked, and left him bleeding from multiple head injuries.  He says Watanabe tore up his request for medical treatment.

On January 16, 2016, Jossy awoke "on the floor next to urine and overflowing sewage," from the toilet.  *Id.*  He suggests this happened because he was "triple celled" with an incontinent inmate.  *Id.*  Jossy says Warden Cabreros was deliberately indifferent because he approved triple-celling at HCCC.

On January 18, 2016, Jossy submitted a medical request for headaches and dizzy spells.  He does not reveal whether he was seen by medical staff.

On February 2, 2016, Jossy filed a grievance reporting "unprovoked assaults on inmates by staff."  *Id.*  He does not identify the staff or inmates to which he refers.  Jossy also submitted a medical request reporting the triple-celling, 24-hour lockdowns, and "no exercise" which he alleges were "making [him] crazy."  *Id.* at PageID #7.  Jossy met with a case manager who allegedly told him there were no treatment options for these conditions and no available psychiatric care.

On February 7, 2016, ACO Towler ordered Jossy to move to a cell with inmate Daniel Kapamau. Jossy told Towler that Kapamau had threatened him, and that he was afraid to share a cell with him. Jossy alleges Towler forced him into the cell and "locked plaintiff in while Kapamau assaulted plaintiff, striking plaintiff repeatedly in the face breaking plaintiff[']s nose." *Id.* Jossy alleges Warden Cabreros, as supervisor of HCCC, was deliberately indifferent for failing to prevent this assault.

On April 3 and 5, and May 4, 2016, Jossy requested psychiatric attention, but his case manager told him there was "no psych doctor" available at HCCC.

On May 13, 2016, Jossy witnessed two inmates having sex. He says one of the inmates then assaulted him, and that ACO Kilmore, who is not a named Defendant, witnessed this assault but failed to intervene.

Finally, Jossy alleges that on an unidentified date he was "moved to Wainuenue housing unit where he was forced to sleep on floor with eight other inmates in a cubicle originally designed for two." *Id.* He says several of these inmates threatened him.

## 2. Incidents at HCF and Waiawa

When Jossy arrived at HCF, in August 2016, he requested mental health counseling. An unidentified person arrived at Jossy's module and asked him what he needed in front of others. Jossy suggests this violated his privacy.

On December 16, 2016, Jossy alleges he began experiencing "stress induced heart attacks." *Id.* Jossy told ACO Marquez that he was having a heart attack at approximately 9:15 p.m.; Marquez ordered him to return to his cell. At approximately 12:00 a.m., Jossy was taken to the medical unit, where he was told that he was fine and to return to his cell. Jossy disputed this and a doctor was called, who ordered Jossy to be transported to the nearest emergency room. Emergency Medical Services arrived and the EMTs requested assistance to transport Jossy to the ambulance. Jossy says unidentified prison staff refused until they received approval from the watch commander. There was a further delay while shackles were located. Jossy says he was "cardioverted,[5] with 120 volts of electricity, then with 240 volts to re-start" his heart, then taken to Pali Momi Medical Center. *Id.*, PageID #7. Jossy was admitted and "treated for atrial

---

[5] "Cardioversion is a medical procedure that restores a normal heart rhythm in people with certain types of abnormal heartbeats (arrhythmias)." Mayo Clinic, Cardioversion, Overview; https://www.mayoclinic.org/tests-procedures/cardioversion. It is normally used to correct a heartbeat that is too fast or irregular. *Id.* "Cardioversion is different from defibrillation, an emergency procedure that's performed when your heart stops or quivers uselessly. Defibrillation delivers more powerful shocks to the heart to correct its rhythm." *Id.*

fibrillation (Afib), Parkinson's-Wolf syndrome (PWS) and other cardio-vascular issues." *Id.*, PageID #8. Jossy remained in the hospital until December 27, 2016, and discharged with a notice regarding the "interrelation" of his mental and physical illnesses, that was provided to HCF with his "Discharge Summary." *Id.* Jossy complains that he was rehoused at HCF in "extremely overcrowded conditions" which exposed him to the same stressors that precipitated his hospitalization. *Id.*

On February 2, 2017, Jossy was "randomly and arbitrarily" housed with an inmate with a history of violence who had previously threatened Jossy. *Id.* Jossy spoke with HCF watch commander Sgt. Sheridan regarding his fears of his new cell mate. Sgt. Sheridan refused to move Jossy, and the next day, February 3, 2017, Jossy was assaulted until he lost consciousness. Jossy does not explicitly allege that his cell mate attacked him, however. Jossy was taken to Pali Momi and diagnosed with multiple head injuries and fractures. Jossy was returned to the same housing unit at HCF, where he was now labeled a "rat." *Id.*

On February 7, 2017, Jossy began bleeding uncontrollably from his head injuries and was taken back to the Pali Momi emergency room. *Id.*, PageID #9.

On February 13, 2017, Jossy was taken to Kapiolani Medical Center for Women & Children, where he received reconstructive facial surgery.

On February 15, 2017, Jossy began experiencing panic attacks, rapid heartbeat and chest pains. He requested emergency medical help but was denied. Approximately an hour and a half later a doctor was consulted, who ordered Jossy to be taken to Pali Momi emergency room. Jossy says he was again "cardioverted to re-start" his heart and treated for paroxysmal atrial fibrillation. *Id.* Jossy was admitted to the cardiac wing and released the next day. Jossy says he was returned to the "same unsafe conditions" at HCF that caused his cardiac emergencies, but still denied mental health treatment.

On February 18, 2017, Jossy experienced panic, rapid heartbeat, dizziness, and chest pains again. He says he was denied "immediate" access to emergency care but was taken to Pali Momi emergency room again. *Id.* Jossy says he was denied housing in the medical unit throughout February 2017.

On April 10, 2017, Jossy was admitted to The Queen's Medical Center for a cardiac ablation, to reduce his attacks. He says he continued to experience panic attacks and cardiac symptoms, however.

Between September 15-28, 2017, Jossy was given a heart monitor to reveal environmental triggers, palpitations, and sinus tachycardia by a Dr. Cyrus Szeto-Wong. Dr. Wong noted that Jossy's "symptoms seem to be related to stress and

anxiety," and recommended "admission to psychiatric treatment center," to manage his symptoms. *Id.*, PageID #10 (11/22/2017 letter).

On May 23, 2018, Jossy received a letter from DPS "WorkNet Inc. Director" Chas Williams, explaining that there are no programs within [DPS] designed to address the needs of inmate with co-occurring disorders . . . [and] no programs specifically addressing the mental health needs of inmates like Mr. Jossy . . . [or] options within Public Safety that are prescriptive to his treatment needs." *Id.*

Jossy continued to request a safe environment and treatment specific to his PTSD and bipoloar disorders, but was allegedly denied. He relates that he heard other inmates screaming, and threats by guards against inmates, and saw blood on the floor. He alleges Sgt. Sheridan assaulted his cell mate he later saw a red mark on his cell mate's back. Jossy says Sgt. Pepper, who is not a Defendant, did nothing when he saw an inmate threaten Jossy. Jossy alleges that watch commander and supervisor Sgt. Sheridan is liable for this environment that caused his fears and anxiety to worsen.

On August 5, 2018, Jossy was threatened by inmate Austin Fernandez. He reported this threat and was moved to module 4B.

On August 29, 2018, Fernandez's friend and fellow gang member, inmate Krause, threatened him.[6] Jossy reported this incident to an unidentified ACO who said that he would speak with Krause, but failed to file a report.

At some point, Jossy met with psychiatrist Dr. Dave Ravi. Ravi reviewed Jossy's records, agreed that he had PTSD, changed Jossy's medication, and opined that he should be provided "trauma focused cognitive behavioral therapy." *Id.*, Page ID #11. Jossy has not received the suggested therapy, and he claims that Ravi's comments support his allegations that he had been denied a proper diagnoses and treatment.

On August 31, 2018, several inmates, including Krause, threatened and harassed Jossy. The ACO escorting Jossy did not intervene, which Jossy alleges is "implied consent" and deliberate indifference. *Id.* at PageID #12.

On September 4, 2018, Jossy was called to the medical unit, but he declined because he feared further insults and threats from inmates would aggravate his PTSD and panic attacks.

On September 28, 2018, two ACOs searched Jossy's cell and told Jossy's cell mate that Jossy was a rat, which caused Jossy to have a panic attack,

---

[6] Jossy actually says that he threatened Krause, but his appears to be a typographical error.

13

palpitations, and chest pains. For the next three days several inmates threatened Jossy, calling him a rat, causing him more panic attacks.

On October 2, 2018, Jossy was moved to a new module and cell. Jossy's cell mate got into an altercation with another inmate and invited that inmate into their cell to "handle their business." *Id.*

On October 4, 2018, Jossy sent Governor David Ige, DPS Director Espinda, HCF Warden Harrington, and Attorney General Douglas Chin his intent to sue based on his allegations above.

On October 17, 2018, inmate Fleetwood allegedly assaulted Jossy. Jossy was immediately moved to another module. He complains that there was no investigation, and says that *he* was punished, by being moved to a different module, rather than the attacker.

Jossy says that HCF staff are not present in the cell blocks and concludes that inmates are completely unmonitored. He says that inmates are sometimes locked in their cells twenty-four hours a day. Jossy says that on November 12, 2018, the electronic locks became stuck, creating a barrier between the cells and staff, which he alleges could have been dangerous.

On November 13 and 14, 2018, Jossy says ACO Fujinaga, who is not a Defendant, used obscene, abusive language to him and others.

On December 19, 2018, Jossy was threatened by a gang member.  Jossy alleges these incidents, combined with his claims regarding delayed or denied health care, show that HCF is unconstitutionally overcrowded.  He says that he notified Ige, Espinda, and Harrington about case law that supports his allegation and requested they provide him mental health care and a safe, stress-free environment.

## B.    Count II:    Due Process

Jossy alleges that he provided information to Waiawa prison staff about contraband brought into Waiawa by the "West Side Gang," and prison staff on July 9, 2017.  *Id.*, PageID #14.  Jossy revealed a gang member's name, and that inmate was taken into special custody.  Other gang members threatened Jossy.

Later that day, ACO Dela Cruz found a razor in Jossy's bunk area and Jossy was charged with possession of a weapon.  He was transferred back to HCF July 10, 2018.  On July 13, 2018, Lt. Maele convened a disciplinary hearing. Jossy asked to see the razor and to call witnesses, but was denied.  He argued that he was set up, did not possess such a razor, and, regardless, had no control over it when it was found.  Lt. Maele found Jossy guilty and he was reclassified to the highest level of security.  Jossy does not state that he was held in disciplinary

segregation based on the guilty finding, but alleges only that the guilty finding and his reclassification were arbitrary and capricious.

Jossy seeks injunctive relief directing (1) Governor Ige, Director Espinda, and Warden Harrington to remove any "gag" orders imposed on prison medical/mental health staff, so that they recommend him to the Hawaii Paroling Authority ("HPA") for parole; (2) the HPA on the importance of the Constitution and parole; (3) the State to provide him a safe environment and access to mental health care; (4) prison officials to expunge his guilty disciplinary findings. *Id.* Jossy also seeks compensatory and punitive damages against all Defendants.

Jossy was released on parole on or about April 11, 2019. *See* ECF No. 6; https://www.vinelink.com/.

### III. <u>DISCUSSION</u>

Jossy brings his claims pursuant to 42 U.S.C. § 1983, and alleges claims arising under the Eighth and Fourteenth Amendments. "To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and*

*remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

Additionally, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A.    Eleventh Amendment Immunity and Injunctive Relief

The "Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007). Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting

*Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010) ); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Jossy cannot sue the State or seek damages against official capacity Defendants. Further, his release on parole moots his claims for prospective injunctive or declaratory relief.[7] *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) ("An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action.").

Jossy's claims: (1) against the State of Hawaii; (2) for prospective injunctive relief; and for (3) damages against official capacity Defendants are DISMISSED with prejudice.

---

[7] Nor may Jossy seek such injunctive relief on behalf of other inmates. *See White v. Geren*, 310 F. App'x 159, 160 (9th Cir. 2009) (affirming dismissal of class action since pro se plaintiff cannot act as an adequate class representative) (citing Fed. R. Civ. P. 23(a)(4) (requiring class representative "to fairly and adequately protect the interests of the class").

**B.    Supervisor Liability**

Jossy alleges supervisory liability claims against Governor Ige, DPS Director Espinda, HCCC Warden Cabreros, and HCF Warden Harrington.  To state a claim against a supervisor under § 1983, a plaintiff must establish that each "[g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  "That means the inmate[] must show that each defendant personally played a role in violating the Constitution." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019).  A prison "official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).  Thus, a "supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018)).

A "causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotation

marks and citations omitted) (alterations in original).  A supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

Jossy shows no causal connection between any supervisory Defendant and the incidents that he alleges took place at HCCC, HCF, and Waiawa.  *Crowley*, 734 F.3d at 977.   Rather, he alleges that, because he notified Ige, Espinda, Cabreros, and Harrington of his intent to sue, they were on notice of and liable for the conditions of confinement about which he complains.  Jossy describes no personal action or inaction that Ige, Espinda, Cabreros, or Harrington took or failed to take that would have prevented his alleged violations.  He does not describe how HCF, HCCC, or Waiawa employees' training is deficient nor allege a policy that these Defendants promulgated that allowed the incidents to have happened.

Jossy fails to allege Governor Ige, Director Espinda, Warden Cabreros, and Warden Harrington were personally involved in any allegation, knew of it before the fact, or had specific information that it might occur and failed to remedy it.

20

*Preschooler II v. Clark Cty. Sch. Bd. of Trs*., 479 F.3d 1175, 1182 (9th Cir. 2007).

Thus, Jossy's "'naked assertion[s]' devoid of 'further factual enhancement'" fail to

state a colorable claim for relief against them. *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557). Claims against Ige, Espinda, Cabreros, and

Harrington in their individual capacities are DISMISSED with leave to amend.

**D.     Doe Defendants**

The Federal Rules of Civil Procedure do not authorize or prohibit the use of

fictitious parties, although Rule 10 requires a plaintiff to include the names of all

parties in his complaint. Fed. R. Civ. P. 10(a). Doe defendants are generally

disfavored, however, because it is generally impossible to serve an anonymous

defendant.

A plaintiff may refer to unknown defendants as John Doe 1, John Doe 2,

John Doe 3, and so on, but he must allege specific facts showing how each

particular doe defendant violated his rights. He may then use the discovery

process to obtain the names of doe defendants and seek leave to name those

defendants, unless it is clear that discovery will not uncover their identities, or that

the complaint will be dismissed on other grounds. *See Wakefield v. Thompson*,

177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637,

642 (9th Cir. 1980)).

Jossy names John Does 1 and 2, but makes no explicit allegations against them in any claim.  Thus, he fails to link any particular allegation to any specific, individual John Doe and explain how that individual personally violated his civil rights.  Claims against John Does 1 and 2 in their individual capacities are DISMISSED with leave to amend.[8]

## D.    Improper Joinder

Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to join as many claims as he has against an opposing party in one action.  Fed. R. Civ. P. 18(a).  But parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

Unrelated claims that involve different defendants must be brought in separate lawsuits.  *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d

---

[8]If Jossy successfully amends his claims against any Doe Defendant, he is responsible for timely identifying and serving them.  *See Aviles v. Vill. of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill.1995) (citation omitted) (stating "authorities clearly support the proposition that Doe defendants must be identified and served within 90 days of the commencement of the action"); Fed. R. Civ. P. 4(m) & 15(c)(1).

1348, 1350-51 (9th Cir. 1997); *Kealoha v. Espinda*, 2017 WL 741570, at *4 (D. Haw. Feb. 24, 2017); *Tagle v. Nev. Dep't of Corr.*, 2016 WL 910174, at *2 (D. Nev. Mar. 9, 2016); *Washington v. Cal. Dep't of Corr.*, 2016 WL 6599812, at *1 (E.D. Cal. Nov. 7, 2016). Rule 18 prevents confusion, ensures that prisoners pay the required filing fees for each lawsuit asserted, and prevents prisoners from circumventing the three-strikes rule set forth under the Prison Litigation Reform Act. *See George*, 507 F.3d at 607; 28 U.S.C. § 1915(g). The court may sever misjoined parties as long as no substantial right is prejudiced by severance. Fed. R. Civ. P. 21, *Coughlin*, 130 F.3d at 1350; *Evans v. Deacon*, 2016 WL 591758, at *6 (D. Or. Feb. 12, 2016).

Jossy's Eighth Amendment claims in Count I, as alleged against HCCC Warden Cabreros, ACOs Nihoa, Fa'avai, Watanabe, Towler, and Dr. Yamamoto do not arise from the same transactions or occurrences as his allegations against HCF Warden Harrington, ACOs Sgt. Sheridan, Marquez, and John Does 1-2. And, Jossy's claims in Count I, regardless of where they occurred, are clearly unrelated to his Due Process claims in Count II, in which he names only Lt. Maele. Jossy fails to show that these alleged actions, taken over three years at three prisons, by different and seemingly unrelated Defendants constitute the same

transaction, occurrence, or series of transactions or occurrences *and* involve common questions of law and fact.

Jossy cannot proceed in one suit with claims in one suit alleged against unrelated, improperly named, and improperly joined Defendants. Jossy's Eighth Amendment claims in Count I naming HCCC Defendants Cabreros, Nihoa, Fa'avai, Watanabe, Towler, and Yamamoto are SEVERED from his claims in Count I naming HCF Defendants Harrington, Sheridan, Marquez, and John Does 1-2. Further, all Eighth Amendment claims in Count I are SEVERED from Jossy's due process claims alleged in Count II. The Complaint is DISMISSED with leave to amend to separate these causes of action as appropriate.

If Jossy elects to amend his pleading, he must decide which claims he will pursue in *this* action and file an amended pleading setting forth those claims against the appropriate Defendants. Jossy may then file a  separate, new action or actions alleging his remaining claims.

## IV.  LEAVE TO AMEND

The Complaint is DISMISSED with leave granted to amend those claims that are not dismissed with prejudice herein, and that are properly joined together in one action, on or before June 19, 2019. The amended pleading must address and cure the deficiencies noted herein. An amended pleading may not expand

Jossy's claims beyond those already alleged or add new claims, without explaining how those new claims relate to the claims alleged in the original Complaint, and how they are linked to his claims against the named Defendants.

Jossy must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which requires an amended complaint to be complete in itself without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and **must be submitted on the court's prisoner civil rights form**.[9]  An amended complaint supersedes the preceding complaint.  *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10.  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012).  If Jossy fails to timely file an amended complaint that cures the deficiencies in his claims noted in this Order, this action may be automatically dismissed and may count as a "strike" under 28 U.S.C. § 1915(g).[10]

_____

[9] Although Jossy is no longer incarcerated, the incidents he complains of allegedly occurred while he was imprisoned and the court's form is structured for alleging and screening such claims.

[10] 28 U.S.C. § 1915 (g) bars a civil action by a prisoner proceeding in forma pauperis:

if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in

(continued...)

## V. **NOTICES**

To enable Jossy to amend his pleadings and to commence a new suit or suits, or to voluntarily dismiss this action until he is able to separate and properly amend his claims, the court provides the following legal standards that apply to his claims. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (stating a court should briefly explain a pro se litigant's pleading deficiencies when dismissing claims with leave to amend).

### A.   **Count I: Eighth Amendment Claims**

As a convicted inmate, Jossy's conditions of confinement claims arise under the Eighth Amendment. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (discussing the differing constitutional standards that apply to convicted inmates as opposed to pretrial detainees). "Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment claim, an inmate

---

[10](...continued)
any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

must show that the prison official's acts or omissions deprived him of the minimal, civilized measure of life's necessities, and that the prison official acted with deliberate indifference to such denials. *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000) (citation omitted).

### 1. *Denial of Adequate Medical and Mental Health Care*

The Eighth Amendment is violated when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds, Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm*, 680 F.3d at 1122; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

To state a claim, a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). It can be shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of

subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1977); Snow, 681 F.3d at 987-88; *Wilhelm*, 680 F.3d at 1122. An Eighth Amendment claim may not be premised on even gross negligence by a physician. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Wilhelm*, 680 F.3d at 1122-23 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986) ). Rather, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citation and internal quotation marks omitted).

### 2. *Failure-to-Protect*

"The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates." *Cortez v. Skol*, 776 F.3d

1046, 1050 (9th Cir. 2015). A prisoner may state a claim under the Eighth Amendment against prison officials by showing that they acted with deliberate indifference to the threat of serious harm or injury to him. *Labatad v. Corr. Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013); *see Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (stating same with respect to harm inflicted by another inmate). A prison official must know that an inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it, before liability can attach. *Labatad*, 714 F.3d at 1160.

### 3. *Excessive Force*

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement, *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006), and the unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment, *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted).

For excessive physical force claims, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors for this determination include "the extent of injury. . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat

'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response. " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)).

### 4. *Overcrowding*

Temporarily housing an inmate in a cell with more inmates than the cell was intended to hold, by itself, does not rise to the level of a constitutional violation. *Rhodes v. Chapman*, 452 U.S. 337, 348-49 (1981) (holding double-celling by itself does not violate the Eighth Amendment). There is no "one man, one cell principle lurking in the Due Process Clause." *Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (quotation marks omitted). Thus, overcrowding has "no constitutional significance standing alone." *Balla v. Idaho State Bd. of Corrs.*, 869 F.2d 461, 471 (9th Cir. 1989).

To state a colorable overcrowding claim, an inmate must plausibly allege that the crowding caused an increase in violence, reduced the provision of other constitutionally required services, or reached a level that rendered the institution unfit for human habitation. *See id.*; *Hoptowit v. Ray*, 682 F.2d 1237, 1248-49 (9th Cir. 1982) (noting that overcrowding by itself does not violate the Constitution, but can lead to specific effects that might do so), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

### 5.    *Threats and Harassment*

The Supreme Court has stated, "the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which "we do not approve," but which do not violate the Eighth Amendment. *Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997) (internal quotation marks omitted); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("[V]erbal harassment or abuse . . . [alone] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (citation and internal quotation omitted); *see also Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (a deprivation of "peace of mind" does not support a constitutional claim).

## B.    **Count II:    Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits the states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To determine whether a procedural due process violation has occurred, a court must first decide whether the inmate was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection

by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, a court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to the prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Further, an inmate has no constitutional right to be housed in a particular prison or cellblock and has no constitutional right to a particular

32

security classification status.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976);

*Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).

Jossy has no right to maintain a particular security classification and he fails

to allege any atypical or significant hardship resulting from his disciplinary

hearing, or, in fact, any disciplinary sanction that he received beyond his

reclassification.

## VI.  <u>CONCLUSION</u>

(1)  The Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) &

1915A(b)(1).

(2) Jossy may file an amended pleading on or before June 19, 2019.  He may

file a separate suit or suits asserting any claims severed herein that are not alleged

in the amended complaint.  Such suits are subject to separate civil filing fees.

Failure to file a timely file an amended pleading that cures the deficiencies

discussed herein may result in dismissal of this action without further notice and

result in a strike pursuant to 28 U.S.C. § 1915 (g).

(3)  The Clerk is DIRECTED to send Jossy a prisoner civil rights complaint

form so that he may assert those claims that he elects to proceed with in this action

and comply with the directions of this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 29, 2019.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Jossy v. State*, 1:19-cv-00055; Order Dismissing Complaint With Leave to Amend